## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

**FREDRICK OEHLER**
860 Ellicott Creek Road
Tonawanda, New York 14150

        Plaintiff,

v.

**THERESA NIETZEL**, individually and in her
official capacity as a detective for the Erie
County Sheriff's Office,
10 Delaware Avenue
Buffalo, New York 14202

**MATTHEW ALBANESE**, individually and in
his official capacity as a deputy for the Erie
County Sheriff's Office,
10 Delaware Avenue
Buffalo, New York 14202

**MATTHEW DELLAPENTA**, individually and
in his official capacity as a Special Agent for the
Department of Homeland Security, Immigration
and Customs Enforcement, Homeland Security
Investigation Department,
250 Delaware Avenue,
Buffalo, New York 14202

**PETER COLAFRANCESDRI**, individually
and in his official capacity as a Special Agent for
the Department of Homeland Security,
Immigration and Customs Enforcement,
Homeland Security Investigation Department,
250 Delaware Avenue,
Buffalo, New York 14202

**E. GACZEWSKI**, individually and in his
official capacity as a Special Agent for the
Department of Homeland Security, Immigration
and Customs Enforcement, Homeland Security
Investigation Department,
250 Delaware Avenue,
Buffalo, New York 14202

**COMPLAINT
AND JURY DEMAND**

Civil Action No.   23-cv-956

**JOHN DOE(s)**, individually and in their official capacity as Custom and Border Protection Officers,
U.S. Customs and Border Protection
John F. Kennedy International Airport
Building 77, 2nd Floor
Jamaica, New York 11430

**UNITED STATES**,
500 12TH Street SW
Washington, DC 20536

Defendants.

Plaintiff, Fredrick Oehler, by his attorneys, Rupp Pfalzgraf LLC, as and for his complaint against defendants, Theresa Nietzel, Matthew Albanese, Matthew DellaPenta, Peter Colafrancesdri, E. Gaczewski, John Doe(s), and the United States (collectively referred to as "Defendants"), allege as follows:

## JURISDICTION

1.      This action is brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), 42 U.S.C. §§ 1983 and 1988, and under the Fourth and Fourteenth Amendments of the United States Constitution.

2.      This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1983.

3.      Plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims and as against parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

2

## VENUE

4.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Western District of New York because the events forming the basis of this action occurred in this District.

## PARTIES

5.    At all times hereinafter mentioned, Fredrick Oehler was and is a citizen of the State of New York, County of Erie, residing at 860 Ellicott Creek Road, Tonawanda, New York 14150.

6.    Defendant, Theresa Nietzel, was and is a resident of the County of Erie and State of New York. She was a detective employed by the Erie County Sheriff's Office at all times hereinafter mentioned, and was acting within the scope of her employment and official capacity as a detective at the time of the incidents giving rise to this lawsuit. In addition, defendant Nietzel is being sued in her individual capacity for damages caused by her actions and/or conduct.

7.    Defendant, Matthew Albanese, was and is a resident of the County of Erie and State of New York. He was a deputy employed by the Erie County Sheriff's Office at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a deputy at the time of the incidents giving rise to this lawsuit. In addition, defendant Albanese is being sued in his individual capacity for damages caused by his actions and/or conduct.

8.    Defendant, Matthew DellaPenta, was and is a resident of the County of Erie and State of New York. He was and is a Special Agent for the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigation Department, employed by the United States of America, at all times hereinafter mentioned, and was acting

3

within the scope of his employment and official capacity as a Special Agent at the time of the incident giving rise to this lawsuit. Defendant DellaPenta is being sued in his individual capacity for damages caused by his actions and/or conduct.

9.      Defendant, Peter Colafrancesdri, was and is a resident of the County of Erie and State of New York. He was and is a Special Agent for the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigation Department, employed by the United States of America, at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a Special Agent at the time of the incident giving rise to this lawsuit. Defendant Colafrancesdri is being sued in his individual capacity for damages caused by his actions and/or conduct.

10.      Defendant, E. Gaczewski, was and is a resident of the County of Erie and State of New York. He was and is a Special Agent for the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigation Department, employed by the United States of America, at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a Special Agent at the time of the incident giving rise to this lawsuit. Defendant Gaczewski is being sued in his individual capacity for damages caused by his actions and/or conduct.

11.      Upon information and belief, defendant(s), John Doe(s), were and are residents of the State of New York. They were and are Custom and Border Protection Officer(s) employed by the United States of America at all times hereinafter mentioned, and were acting within the scope of their employment and official capacity as Custom and Border Protection Officer(s) at the time of the incidents giving rise to this lawsuit. John Doe(s) are being sued in their individual capacity for damages caused by their actions and/or conduct.

4

12.     Defendant, the United States, was and is an entity existing under the laws of the United States of America, including the United States Constitution and all laws enacted pursuant to the Constitution.  Defendant United States has a business address at 500 12th Street SW, Washington, DC 20536.  Defendant United States, through its officers, agents, and/or employees defendants Matthew DellaPenta, Peter Colafrancesdri, and E. Gaczewski committed the complained of actions at issue in this litigation, as described below

13.     At all relevant times, defendants Theresa Nietzel and Matthew Albanese and (collectively referred to as "State Defendants") were acting under the color of state law.

14.     At all relevant times, defendants Matthew DellaPenta, Peter Colafrancesdri, E. Gaczewski, and the United States (collectively referred to as "Federal Defendants") were acting under the color of Federal law.


## COMPLIANCE WITH REQUIREMENTS OF THE FEDERAL TORT CLAIMS ACT

15.     On or around January 20, 2023, Plaintiff timely filed an administrative claim with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations by mailing a "Claim for Damage, Injury, or Death" to the United States Immigration and Customs Enforcement Department located at 500 12th Street SW, Mailstop 5900, Washington, DC 20536, as required pursuant to the instructions set forth by ICE on its website.[1]  A letter demonstrating this compliance is attached as **Exhibit A**.

16.     The administrative claim filed with the appropriate Federal agency set forth the facts underlying Plaintiff's claims against Federal defendants Matthew DellaPenta,

---

[1] https://www.ice.gov/about-ice/opla/ftca

Peter Colafrancesdri, E. Gaczewski, John Doe(s), and United States. A copy of the administrative claim filed by Plaintiff is attached as **Exhibit B**.

17. To date, no compensation has been offered by defendants DellaPenta, Colafrancesdri, Gaczweski, John Doe(s), or the United States in response to Plaintiff's presentation of this claim.

18. It has been more than six months since Plaintiff filed his administrative claim with the appropriate Federal agency.

19. Therefore, Plaintiff has complied with all procedural requirements necessary to maintain this lawsuit against the Federal defendants.

## FACTUAL BACKGROUND

### Overview

20. Mr. Oehler is a truck driver who, at the time of these incidents, worked for YRC trucking, which is now known as Yellow Trucking.

21. Mr. Oehler has a collection of classic automobiles that he enjoys working on in his spare time.

22. On or around January 2021, Mr. Oehler purchased a fuel filter for one of his vehicles through the commercial website AliExpress.com.

23. A fuel filter has multiple legal and legitimate uses. Generally, a fuel filter is used to screen out foreign particles or liquids from the fuel. Most internal combustion engines use a fuel filter in order to protect the components in the fuel system.

24. In addition to AliExpress.com, fuel filters may be bought commercially through multiple websites and/or at auto parts stores.

25. However, upon information and belief, other individuals have used and converted fuel filters into firearm mufflers or silencers, which is illegal.

26. The National Firearms Act defines a firearm silencer or muffler to mean "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for the use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." *See* 18 U.S.C. § 921(A)(24).

27. For a fuel filter to be converted into a firearm silencer, the owner must purchase baffles and a converter that allows the fuel filter to attach to a firearm. The owner would then need to drill holes through the baffles to allow a projectile to pass through and to prevent the fuel filter and firearm from exploding.

28. Without adding baffles to the fuel filter, the gunshot would not be "silenc[ed], muffl[ed], or diminish[ed]," and therefore it would not fall within the definition of a firearm silencer or muffler.

29. On or around January 22, 2021, the fuel filter purchased by Mr. Oehler was delivered from its point of manufacture in China and arrived in the United States at the Customs and Border Protection ("CBP") Facility at JFK Airport.

30. One or more of the CBP Officers, currently identified as "John Doe(s)," targeted the package from China, labeled with USPS Tracking Number #LY614081819CN.

31. Following a physical examination of the package, the CBP Officers, John Doe(s), incorrectly classified the solvent trap as a firearms silencer.

32. On or around January 25, 2021, Special Agent ("SA") Matthew DellaPenta of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), Buffalo, New York office was

notified that CBP Officers at JFK Airport intercepted a package containing a firearm silencer and that it was destined to Mr. Oehler's home located at 860 Ellicott Creek Road, Tonawanda, New York 14150.

33.     The notification from the CBP Officers, John Doe(s), included misleading photographs of the contents of the package, including a photograph that showed the fuel filter casing, fuel filter core, and two end caps.  The photographs, however, were insufficient to determine whether the package included other necessary components to convert the fuel filter into an illegal firearm suppressor—i.e., baffles and a converter so that the recipient of the package could attach the fuel filter to a firearm.

34.     In addition, upon information and belief, the fuel filter came with only one end cap drilled, and therefore when unmodified a bullet could not pass through the fuel filter without causing it and the firearm to explode, causing a noise much louder than the gunshot itself from a firearm without a silencer.  Therefore, the fuel filter, unmodified, could not possibly be used as a firearm silencer.

35.     Upon information and belief, the false notification from the CBP Officers, John Doe(s), was part of ATF's increasing concern regarding the proliferation of fuel filters that are sometimes modified and used as unregistered firearm silencers.

36.     Over the past several years, ATF has even raided companies that sell fuel filters in an effort to stop this proliferation.

37.     In addition to these efforts, ATF has started to target end-users of these fuel filters.

38.     Fuel filters, when unmodified, have a completely non-suppressor purpose.  In fact, a fuel filter cannot be used as a silencer.  If it is converted to attach to a firearm and if

baffles are added to the fuel filter so that it may be used as a suppressor, then it is not functional as a fuel filter.

39.    ATF knows that some purchasers of fuel filters modify them so that they can be used as a silencer.  Therefore, ATF has issued memos and other forms of guidance to Federal law enforcement officers, including CBP officers, telling them to target packages with fuel filters.

40.    Upon information and belief, as part of these memos and guidance, ATF instructs CBP and other law enforcement agents that they should target packages containing fuel filters and further that they should take misleading photographs of the fuel filter so that it appears to be a firearm silencer, even though ATF knows that other components and further steps are required to convert the fuel filter into an illegal firearm silencer.

41.    ATF further instructs CBP and other law enforcement officers to use those misleading photographs and send to local law enforcement agents, along with a false notification that the unmodified fuel filter is in fact a firearm silencer.

42.    Upon information and belief, CBP and other Federal law enforcement agents follow this procedure and falsely notify local law enforcement of the delivery of an illegal firearm silencer for every fuel filter that is mailed into the United States.

43.    Upon information and belief, ATF's procedure and guidance results in thousands of such notifications every single year regarding the distribution of fuel filters.

44.    Upon information and belief, local and Federal law enforcement agencies are aware of ATF's policy of over-enforcement regarding fuel filters.

45.    Most of the time local law enforcement agencies ignore these notifications from CBP or other Federal law enforcement agents.

9

46.    However, sometimes local law enforcement agencies use these false notifications to obtain a search warrant when they know or have reason to suspect that the purchaser of the fuel filter may have other firearms or weaponry that local law enforcement agencies would like seized.

47.    Upon information and belief, in such circumstances, local law enforcement agents will receive a false notification from CBP or other Federal law enforcement agents that an individual in their jurisdiction is receiving a package containing a firearm silencer. Despite knowing or having reason to know that the item in the package is not a firearm silencer, the local law enforcement agents are happy to seek a search warrant by falsely identifying the item in the package as a firearm silencer, rather than a fuel filter, to search the home and seize the firearm and weapon inventory that they suspect the individual has and that the local law enforcement agent or agency would like seized.

48.    ATF, local law enforcement agencies, and other Federal law enforcement officers know or should know that, by falsely identifying the property as a firearm silencer in an application for a search warrant, judges will immediately sign off on any search warrant application without any further information to justify the search.

49.    ATF, local law enforcement agencies, and other Federal law enforcement officers know or should know that, by falsely identifying the property as a firearm silencer in the application for a search warrant, thereby misleading the reviewing magistrate judge, they are violating the purchaser's Fourth Amendment rights under the United States Constitution.

50.    On or around January 25, 2021, Detective Theresa Nietzel ("Detective Nietzel") of the Erie County Sheriff's Office ("ECSO") was notified by SA DellaPenta that a package containing a firearm silencer was destined to arrive at Mr. Oehler's home, and SA DellaPenta requested assistance from Detective Nietzel to investigate and seize the package.

10

51.    On or around January 28, 2021, CBP mailed to Mr. Oehler a "Notice of Seizure and Information to Claimants Non-CAFRA Form," which notified Mr. Oehler that CBP seized the package and determined that the fuel filter was an illegal firearm silencer.

52.    The Notice included an "Election of Proceedings – Non-CAFRA Form," which allowed the recipient of the Notice to choose one of five options regarding CBP's next steps regarding the intercepted package—including, inter alia, abandoning the package that was deemed by CBP to be suspicious or containing illegal property.

53.    The Notice also provided Mr. Oehler a 30-day deadline to respond to the Notice with an "Election of Proceedings" regarding CBP's next steps for the intercepted package.

54.    Mr. Oehler was shocked and confused by the Notice from CBP, as he intended to and believed that he purchased a fuel filter from AliExpress.com, not a firearm silencer.

55.    Nevertheless, to avoid any unintended consequences resulting from his purchase of a legal fuel filter, on or around February 1, 2021, Mr. Oehler returned to CBP the Notice with the "Election of Proceedings" checking the box that indicated he wished to "ABANDON" the package and fuel filter.

56.    Despite offering Mr. Oehler 30 days to abandon the package and fuel filter, on or around February 4, 2021, SA DellaPenta conducted surveillance on Mr. Oehler and determined that he resided at 860 Ellicott Creek Road, Tonawanda, New York.

57.    Upon information and belief, despite knowing or having reason to know that the notification of a firearm silencer to Mr. Oehler was false, on or around February 10, 2021, Detective Nietzel from ECSO applied for a search warrant (the "search warrant application") from Judge Christopher J. Burns, J.S.C. of the Erie County Supreme Court.

11

58.    Upon information and belief, prior to receiving such a notification from CBP Officers, John Doe(s), SA DellaPenta and/or Detective Nietzel were aware that Mr. Oehler had an inventory of assault weapons that Defendants believed to be illegal.

59.    Upon information and belief, SA DellaPenta and/or Detective Nietzel wished to seize Mr. Oehler's assault weapons.

60.    Upon information and belief, despite knowing or having strong reason to know that the notification of a firearm silencer to Mr. Oehler was false, SA DellaPenta and/or Detective Nietzel used the false notification to obtain a search warrant and seize Mr. Oehler's assault weapons that Defendants believed were in his possession.

61.    Detective Nietzel swore on the search warrant application that she received information from SA DellaPenta that Mr. Oehler was receiving a firearm silencer, which was to be delivered at 860 Ellicott Creek Road, Tonawanda, New York during a controlled delivery by law enforcement officers.

62.    Detective Nietzel swore that, on January 25, 2021, she was notified by SA DellaPenta that the package to be delivered to Mr. Oehler was deemed suspicious and was intercepted by CBP Officers, John Doe(s), at a JFK Airport CBP Facility in Jamaica, New York.

63.    According to Detective Nietzel, unnamed CBP Officers, John Doe(s), searched the package and determined that it contained a firearm silencer.

64.    Detective Nietzel swore that the package was addressed to Fredrick Oehler at 860 Ellicott Creek Road, Tonawanda, New York.

65.    According to Detective Nietzel, the package was received by "Law Enforcement Officers in Buffalo NY," who planned to perform a controlled delivery of the package to the 860 Ellicott Creek Road address.

66.    The search warrant application did not state whether the "Law Enforcement Officers in Buffalo NY" investigated the package themselves to determine the contents of it.

67.    Upon information and belief, the search warrant application did not specify whether the package was searched by Buffalo "Law Enforcement Officers" because Detective Nietzel knew that, despite having the package mailed to him, SA DellaPenta never bothered to investigate the package himself to determine the contents of it.

68.    Buffalo "Law Enforcement Officers," including Detective Nietzel and/or SA DellaPenta, should have opened the package to determine its contents, but instead they relied entirely on the conclusion by unknown CBP Officers, John Doe(s), that the package contained a firearm silencer when in fact they knew or should have known that it did not.

69.    Detective Nietzel wrote that, based on her past experience and having conducted "numerous firearms investigations," Mr. Oehler's home and/or vehicle should be entered without giving notice of authority or purpose based on the grounds that giving notice may endanger the life or safety of the executing police officers as it is likely that firearms may be present.

70.    Despite Detective Nietzel's recommendation, Mr. Oehler has never been involved in a violent crime.

71.    Additionally, at the time, Mr. Oehler had never been investigated or convicted of any firearms related offenses, nor had there ever been any police calls to his home based on firearms.

72.    In fact, prior to this incident, Mr. Oehler had never been charged or convicted of any crime.

73.     Detective Nietzel also requested that Judge Burns allow the seizure of any weapon the incorrectly categorized firearm silencer is capable of attachment thereto.

74.     In addition, Detective Nietzel also applied for the seizure of any evidence that tends to demonstrate criminal possession of weapons, including ammunition, ammunition magazines, firearms boxes, holsters, and any personal papers or documents that would tend to identify the owner, lessee, or whomever has custody or control over the premises or items seized.

75.     On or around February 10, 2021, Judge Burns granted Detective Nietzel's search warrant application, which contained all the information from the search warrant application, including Detective Nietzel's false allegation that the package to Mr. Oehler contained a firearm silencer when in fact it contained only a fuel filter.

76.     The search was required to take place within 10 days of the issuance of the search warrant.

77.     Nowhere in the search warrant application or the search warrant do either of the documents make note that the item in the package was a fuel filter, which is legal to purchase and own, and that further steps were needed to be taken to convert the fuel filter into an illegal firearm silencer.

78.     Moreover, nowhere in the search warrant application does Detective Nietzel make a differentiation between an unaltered fuel filter, which is entirely legal, and an altered fuel filter converted to a firearm silencer, which is illegal.

79.     According to the ECSO Police Report (the "police report") on February 11, 2021, Detective Nietzel and Deputy Matthew Albanese of ECSO, unspecified "members of Homeland Security Investigations," unspecified "U.S. Postal Inspectors," and unspecified police officers with the "Town of Tonawanda Police Department," executed the search warrant signed by Judge Burns on Mr. Oehler's home.

14

80. Upon information and belief, the unspecified "members of Homeland Security Investigations" who assisted in the execution of the search warrant included SA DellaPenta, SA Peter Colafrancesdri, and SA E. Gaczewski.

81. According to the police report, the package was "hand delivered to Mr. Fredrick Oehler" during a controlled delivery, and a search of Mr. Oehler's home ensued shortly thereafter by the agents described in ¶¶ 79 and 80, above.

82. The personnel listed in ¶¶ 79 and 80 took the following items from Mr. Oehler's home and sent them to ECSO's property room, located at 45 Elm Street, Buffalo, New York : (1) two AM-15 Anderson Manufacturing .223 firearms; (2) a Palmetto .308; (3) two Aero Precision .556 firearms; (4) a Ruger Mini 30 .308; (5) two Palmetto .556 firearms; (6) a Winchester 12 Gauge Pump Shotgun; (7) two Ruger 22 Caliber firearms with scopes; (8) a Marlin .308 rifle; (9) an Ithaca 12 Gauge Pump Shotgun; (10) a Browning Bar .20 .06 Caliber Rifle; (11) two Browning 12 Gauge Shotguns; (12) a Remington 870 Express 12 Gauge Shotgun with scope; (13) two Winchester 1300 12 Gauge Shotguns; (14) a Harrington & Richardson 410 Caliber single-shot rifle; (15) an American Arms 12 Gauge Side by Side; (16) a Palmetto Pa-10 Multi 7.62x51 rifle; (17) a Winchester 94 AE 30-30; (18) two Winchester .22 rifles; (19) a Schrade Viper Dagger; (20) twenty to thirty boxes of ammunition; (21) a Samsung Galaxy cell phone; (22) three Samsung tablets; and (23) a Dell laptop.

83. Following the search of his home, Mr. Oehler was arrested, interrogated by Detective Nietzel and SA DellaPenta, and then sent to the Erie County Holding Center, where he remained imprisoned for six (6) days.

84. Mr. Oehler was charged with five (5) counts of Felony Criminal Possession of a Weapon in the Third Degree.

85.    Specifically, Mr. Oehler was charged with four (4) violations of New York Penal Law § 265.02(7), which criminalizes the possession of certain assault weapons.

86.    As explained above, evidence supporting these four (4) charges was obtained in violation of Mr. Oehler's constitutionally protected rights and pursuant to a bogus search warrant that included materially false information—i.e., that the fuel filter purchased by Mr. Oehler was instead an illegal firearm silencer.

87.    Mr. Oehler also was charged with one (1) violation of New York Penal Law § 265.02(2), which criminalizes the possession of a firearm silencer.

88.    However, as explained above, Mr. Oehler was not in possession of a firearm silencer; rather, he purchased and was in possession of a fuel filter that, when unmodified, is legal to own.

89.    The criminal complaints that charged Mr. Oehler with said crimes were signed by Detective Nietzel.

90.    As explained in detail above, Detective Nietzel knew, or should have known, that the fuel filter purchased by Mr. Oehler was not modified and therefore it was not a firearm silencer.

91.    Nevertheless, Detective Nietzel signed the criminal complaint under the penalty of perjury and alleged that the fuel filter purchased by Mr. Oehler was, instead, an illegal firearm silencer.

92.    After his employer, YRC Trucking, received notice of Mr. Oehler's criminal charges, they told Plaintiff that if he was convicted or pled guilty to _any_ crime, he would be fired.

93.    In addition, Mr. Oehler's employment as a truck driver requires him to have a HAZMAT endorsement on his CDL license.  Shortly after his arrest, Mr. Oehler received

16

a notification from DMV that stated if he was found guilty of *any* crime, his HAZMAT endorsement would be terminated.

94.    Termination of Mr. Oehler's HAZMAT endorsement effectively would have led to his firing from YRC Trucking as his position required him to have the HAZMAT endorsement on his CDL license.

95.    In addition, shortly after his arrest, news stories were published in the KenTon Bee and by WIVB News of Mr. Oehler's arrest.  Mr. Oehler's friends, family, and colleagues read these news stories, learned of his arrest and the charges pending against him, and received only Defendants' version of the facts concerning Mr. Oehler's arrest.

96.    When these news stories were published, Mr. Oehler still had not had an opportunity to contest Defendants' version of the facts and to prove his innocence of the charges that were pending against him.

97.    As a result of the publishing of these news stories, Mr. Oehler's personal and professional reputation was substantially harmed and continues to be harmed.

98.    Mr. Oehler was arraigned and then forced to attend multiple court hearings as a result of the false criminal charges filed against him by Detective Nietzel.

99.    Mr. Oehler's attorney in the criminal proceedings provided the District Attorney with a decision from Judge Burns in a criminal case with similar facts, People v. John Andrews (Case No. 2020-0079), in which Judge Burns granted the defendant's motion and suppressed all the inventory of a search that was performed pursuant to a bogus search warrant that was obtained by falsely alleging in an application for a search warrant that the defendant was having a firearm silencer delivered to his residence when in fact the item that was delivered was a legal solvent trap.

17

100. After providing the District Attorney with a copy of the prior decision from Judge Burns, he agreed to dismiss the charges against Mr. Oehler without a trial and with prejudice.

101. Even though all charges against Mr. Oehler have been dismissed, a simple Google search of "Fredrick Oehler" will demonstrate that Plaintiff's character and reputation have forever been damaged due to Defendants' illegal entry and search of his home on February 11, 2021. That is, the KenTon Bee and WIVB News stories still can be found with a Google search, and there is no follow-up information that states the criminal charges were dismissed against Mr. Oehler because they were without merit.

102. Mr. Oehler would not have had to go through this chain of events had it not been for the aforementioned departments and agencies recklessly and falsely claiming that Mr. Oehler's legal fuel filter was an illegal firearm silencers, failing to differentiate between a fuel filter and a silencer in the search warrant application, and the illegal search stemming from the bogus search warrant.

103. As a direct and proximate result of Defendants' conduct, Mr. Oehler has been compelled to retain the services of counsel to protect and enforce his rights, and therefore, Mr. Oehler has incurred and continues to incur attorneys' fees, expert fees, and costs for which Mr. Oehler is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. § 1988.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
**Unreasonable Search and Seizure under *Bivens* and 42 U.S.C. § 1983**
**Against All Defendants**

104.    Mr. Oehler incorporates the allegations contained in paragraphs 1 through 103 of this complaint as if fully set forth herein.

105.    At all relevant times, Mr. Oehler enjoyed and possessed a right under the Fourth and Fourteenth Amendment of the Constitution of the United States to be free from unreasonable searches and seizures and to be secure in his person, home, personal effects, and property.

106.    As described above, Defendants unlawfully and unreasonably entered and searched (or caused the entrance and search through their actions described above) of Mr. Oehler and his home and property, without lawful authority in the form of probable cause or a validly issued judicial search warrant naming Mr. Oehler or his home.

107.    Defendants forcefully entered into Mr. Oehler's home, searched his home and property, and destroyed and seized items of personal property from Mr. Oehler and the residence.

108.    Defendants continued to search Mr. Oehler's home and property and destroyed and seized items of personal property from Mr. Oehler and the residence without lawful authority.

109.    As a direct and proximate result of Defendants' unlawful actions as alleged herein, Defendants deprived Mr. Oehler of his rights under the Fourth and Fourteenth Amendment to be free from unreasonable search and seizure.

110.    Defendants' conduct was outrageous, intentional, and malicious, or at the very least grossly negligent, exhibiting a reckless disregard and deliberate indifference for Mr. Oehler's rights.

111.    Defendants' initial entry into Mr. Oehler's home, as well as Defendants' subsequent search and seizure of Mr. Oehler's home and property, were not otherwise privileged and were performed in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

112.    The State Defendants at all relevant times were acting under the color of state law.

113.    The Federal Defendants at all relevant times were acting under the color of Federal law.

114.    As a direct and proximate result of the foregoing, Mr. Oehler was damaged and injured in an amount to be determined at trial.

115.    The aforesaid conduct by Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. Oehler claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT**
**Violation of Mr. Oehler's Right Against Unreasonable Search and Seizure**
**by Presenting a False Affidavit in Support of a Search Warrant under *Bivens***
**and 42 U.S.C. § 1983**
**Against Matthew DellaPenta, Theresa Nietzel, and John Doe(s)**

116.    Mr. Oehler incorporates the allegations contained in paragraphs 1 through 115 of this complaint as if fully set forth herein.

20

117. On February 10, 2021, Defendants obtained a search warrant allowing the search of Mr. Oehler's residence.

118. To obtain the search warrant, defendant Nietzel, relying entirely on the false information forwarded to her by defendants DellaPenta and John Doe(s), and without performing any independent investigation of her own, presented to Erie County Supreme Court Judge Christopher J. Burns, J.S.C. a false affidavit in support of the search warrant for Mr. Oehler's residence.

119. The affidavit defendant Nietzel presented to Judge Burns contained materially false information—i.e., that the legal fuel filter was instead an illegal firearm silencer.

120. Without defendant Nietzel's inclusion of the materially false information, the search warrant would not have issued.

121. Defendant Nietzel included in her affidavit materially false information deliberately, in conscious disregard for the truth, and knowing said information to be false.

122. Defendants executed said search warrant and searched and seized Mr. Oehler's residence pursuant to said search warrant, which was based upon the knowingly false affidavit defendant Nietzel that relied entirely on false information provided by defendants DellaPenta and John Doe(s) that they knew or should have known was false, and which was submitted in support of the application for a search warrant.

123. At all relevant times, the Federal Defendants were acting under the color of Federal law.

124. At all relevant times, defendant Nietzel was acting under the color of state law.

125. As a direct and proximate result of the foregoing, Mr. Oehler was damaged and injured in an amount to be determined at trial.

126.    The aforesaid conduct by Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## THIRD CLAIM FOR RELIEF

### VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS
#### Failure to Intervene under the FTCA, State Law, *Bivens*, and 42 U.S.C. § 1983
#### Against All Defendants

127.    Plaintiff incorporates the allegations contained in paragraphs 1 through 126 of this complaint as if fully set forth herein.

128.    Defendants failed to take reasonable steps to prevent their fellow officers from engaging in the illegal acts alleged herein, though they were present at the scene of such violations and were capable of doing so.

129.    Defendants' actions violated Plaintiff's constitutionally protected rights under the Fourth and Fourteenth Amendments.

130.    Defendants knew, or reasonably should have known, that their conduct violated Plaintiff's clearly established constitutionally protected rights and rights under New York state law.

131.    Defendants acted with intent to violate, or with deliberate or reckless indifference to, Plaintiff's clearly established rights under New York State law and the Fourth and Fourteenth Amendments of the United States Constitution.

132.    At all relevant times, State Defendants were acting under the color of state law.

133.    At all relevant times, Federal Defendants were acting under the color of Federal law.

22

134. As a direct and proximate result of the foregoing, Plaintiff was damaged and injured in an amount to be determined at trial.

135. The aforesaid conduct by Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS
**Conspiracy to Violate Mr. Oehler's Constitutional Rights
under *Bivens* and 42 U.S.C. § 1983
<u>Against All Defendants</u>**

136. Plaintiff incorporates the allegations contained in paragraphs 1 through 135 of this complaint as if fully set forth herein.

137. By and through the actions described above, Defendants, acting under the color of state or Federal law, conspired to deprive Plaintiff of his constitutional rights, in violation of *Bivens*, 42 U.S.C. § 1983, and his Fourth and Fourteenth Amendment as guaranteed by the United States Constitution.

138. Defendants conspired amongst themselves to illegally enter and search Plaintiff's home.

139. Defendants agreed to deprive Plaintiff of his constitutional rights and deprived him of his constitutional rights by illegally entering and searching Plaintiff's home and/or causing law enforcement to enter and search Plaintiff's home by disseminating false information that Mr. Oehler was having an illegal firearm silencer mailed to his home, thereby causing Plaintiff physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

23

140.     At all relevant times, State Defendants were acting under the color of state law.

141.     At all relevant times, Federal Defendants were acting under the color of Federal law.

142.     As a direct and proximate result of the foregoing, Plaintiff was damaged and injured in an amount to be determined at trial.

143.     The aforesaid conduct by Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
### False Arrest under the FTCA, State Law, *Bivens*, and 42 U.S.C. § 1983
### <u>Against all Defendants</u>

144.     Mr. Oehler incorporates the allegations contained in paragraphs 1 through 143 of this complaint as if fully set forth herein.

145.     Defendants are liable pursuant to the FTCA, State Law, *Bivens*, and 42 U.S.C. § 1983 for objectively unreasonably seizing and unlawfully arresting Mr. Oehler in violation of New York State law and the Fourth and Fourteenth Amendments to the United States Constitution.

146.     State Defendants were acting under the color of state law when Mr. Oehler was arrested.

147.     Federal Defendants were acting under the color of Federal law when Mr. Oehler was arrested.

148.    Defendants did not have probable cause to charge that Mr. Oehler violated any State or Federal law.

149.    Defendants deprived Mr. Oehler of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of the FTCA, State Law, *Bivens*, and 42 U.S.C. § 1983.

150.    Defendants confined Mr. Oehler when they handcuffed him and told him he was going to jail on February 11, 2021.

151.    Defendants continuously confined Mr. Oehler until he was released over a week later.

152.    Mr. Oehler was aware of the confinement by Defendants and repeatedly advised them that he did not consent to the confinement.

153.    The confinement by Defendants was not otherwise privileged and was performed in violation of New York State law and the Fourth and Fourteenth Amendments of the Constitution of the United States.

154.    As a direct and proximate result of the foregoing, Mr. Oehler was damaged and injured in an amount to be determined at trial.

155.    The aforesaid conduct by Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. Oehler claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
**False Imprisonment under the FTCA, State Law, *Bivens* and 42 U.S.C. § 1983**
<u>**Against All Defendants**</u>

156.    Mr. Oehler incorporates the allegations contained in paragraphs 1 through 155 of this complaint as if fully set forth herein.

157.    Defendants are liable pursuant to the FTCA, State Law, *Bivens*, and 42 U.S.C. § 1983 for objectively unreasonably seizing and unlawfully arresting Mr. Oehler in violation of State Law and the Fourth and Fourteenth Amendments to the United States Constitution.

158.    State Defendants were acting under the color of state law when Mr. Oehler was arrested and imprisoned.

159.    Federal Defendants were acting under the color of Federal law when Mr. Oehler was arrested and imprisoned.

160.    Defendants did not have probable cause to charge that Mr. Oehler violated any State or Federal law.

161.    Defendants deprived Mr. Oehler of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of the FTCA, State Law, *Bivens*, and 42 U.S.C. § 1983.

162.    Defendants confined Mr. Oehler when they handcuffed him and told him he was going to jail on February 11, 2021.

163.    Defendants continuously confined Mr. Oehler until he was released over a week later.

164.    Mr. Oehler was aware of the confinement by Defendants and repeatedly advised the officers that he did not consent to the confinement.

165.    The confinement by Defendants was not otherwise privileged and was performed in violation of New York State law and the Fourth and Fourteenth Amendments of the Constitution of the United States.

166.    As a direct and proximate result of the foregoing, Mr. Oehler was damaged and injured in an amount to be determined at trial.

167.    The aforesaid conduct by Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. Oehler claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## SEVENTH CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
**Malicious Prosecution under the FTCA, State Law, *Bivens*, and 42 U.S.C. § 1983**
**Against All Defendants**

168.    Mr. Oehler incorporates the allegations contained in paragraphs 1 through 167 of this complaint as if fully set forth herein.

169.    Defendants unreasonably seized and unlawfully arrested Mr. Oehler in violation of New York State law and the Fourth and Fourteenth Amendment of the United States Constitution.

170.    Upon information and belief, Defendants despite knowing that probable cause did not exist to detain, arrest, and prosecute Mr. Oehler for any violations of New York State or Federal law, acted intentionally, and with malice, to cause Mr. Oehler to be arrested, charged and prosecuted for those charges, thereby violating Mr. Oehler's rights pursuant to New York State law and the Fourth and Fourteenth Amendments of the United States Constitution.

27

171.    The prosecution of the charges levied by Defendants against Mr. Oehler on February 11, 2021 were terminated in Mr. Oehler's favor.

172.    But for Defendants' unlawful and malicious conduct, Mr. Oehler would not have been arrested and prosecuted.

173.    Upon information and belief, Defendants' actions and conduct were malicious and deprived Mr. Oehler of his liberty without probable cause and were in violation of clearly established constitutional law and no reasonable police officer would have believed that his or her actions were lawful.

174.    At all relevant times, State Defendants were acting under the color of state law.

175.    At all relevant times, Federal Defendants were acting under the color of Federal law.

176.    As a direct and proximate result of the foregoing, Mr. Oehler was damaged and injured in an amount to be determined at trial.

177.    The aforesaid conduct by Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. Oehler claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## DEMAND FOR JURY TRIAL

178.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

Plaintiff, Fredrick Oehler, prays for relief and demands judgment as follows:

28

1. That Plaintiff be awarded compensatory damages against all Defendants in an amount to be determined at trial;

2. That Plaintiff be awarded punitive damages against all Defendants in an amount to be determined at trial;

3. That this Court, pursuant to 42 U.S.C. § 1988, issue an order awarding Plaintiff reasonable attorneys' fees, together with the costs of this action against all Defendants; and

4. That this Court award such other further relief, together with any other legal or equitable relief, or both, as the Court deems just and proper.

Dated:    September 11, 2023
          Buffalo, New York

**RUPP PFALZGRAF** LLC
*Attorneys for Plaintiff*

_____s/Chad A. Davenport_____
R. Anthony Rupp III
Chad A. Davenport
1600 Liberty Building
Buffalo, New York  14202
Phone:  (716) 854-3400
rupp@rupppfalzgraf.com
davenport@rupppfalzgraf.com
4873-4894-8551, v. 1