UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FREDRICK OEHLER,

                                    Plaintiff,

v.

THERESA NIETZEL,
MATTHEW ALBANESE,
MATTHEW DELLAPENTA,
PETER COLAFRANCESDRI,
E. GACZEWSKI,
JOHN DOE(S) CUSTOMS AND BORDER
PROTECTION OFFICERS,
and THE UNITED STATES,

                                     Defendants.

_____

**REPORT AND
RECOMMENDATION**

23-cv-00956(JLS)(JJM)

        Plaintiff Fredrick Oehler commenced this action for alleged civil rights violations arising from his online purchase of a device, identified as a fuel filter, that was determined by Customs and Border Protection ("CBP") to be an illegal firearm silencer. This began a series of events culminating in the execution of a search warrant at Oehler's residence, followed by criminal charges against him which were later dismissed. *See* Complaint [1].[1]

        Before the court are the motions by (1) defendants Therese Nietzel and Matthew Albanese (collectively, the "County Defendants") to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) [4]; (2) defendants Matthew DellaPenta, Peter Colafranceschi (incorrectly identified in the Complaint as Peter Colafrancesdri) and Edward Gaczewski

---

[1]      Bracketed references are to CM/ECF docket entries and page references are to CM/ECF pagination.

(identified as E. Gaczewski) (collectively, the "Individual Federal Defendants") to dismiss the Complaint pursuant to Rule 12(b)(6) and for substitution of a party [16]; (3) defendant United States to dismiss the Complaint pursuant to Rule 12(b)(1) and 12(b)(6) [17]; and (4) Oehler's cross-motion [20] to strike the Declaration of Gregory Stimmel submitted in support of the United States' motion to dismiss, all of which have been referred to me by District Judge John L. Sinatra, Jr. for initial consideration [5]. Having reviewed the parties' submissions [4, 16, 17, 20, 22-29], I recommend that Oehler's motion to strike [20][2] and the Individual Federal Defendants' motion to dismiss and substitute [16] be granted, and that the remaining motions [4, 17] be granted in part and denied in part.


## BACKGROUND

Oehler's Complaint alleges that the Bureau of Alcohol Tobacco and Firearms ("ATF") had an increasing concern "regarding the proliferation of fuel filters that are sometimes modified and used as unregistered firearms silencers", causing it to instruct CBP "and other law enforcement agents that they should target packages containing fuel filters . . . even though [the] ATF knows that other components and further steps are required to convert the fuel filter into an illegal firearm silencer". [1], ¶¶35, 40. Specifically, it alleged that in order for a fuel filter to constitute a "firearms silencer" under the National Firearms Act, "the owner must purchase baffles and a converter that allows the fuel filter to attach to a firearm", as well as "drill holes through the baffles to allow a projectile to pass through and to prevent the fuel filter and firearm from exploding". Id., ¶¶26-28.

---

[2]    Although a motion to strike is ordinarily non-dispositive, out of an abundance of caution I have treated it as dispositive since it bears on the United States' motion to dismiss.

Oehler was allegedly swept up in the ATF's enforcement efforts.  He allegedly ordered a fuel filter for one of his vehicles through a commercial website. Id., ¶¶21-22.  When the package containing the fuel filter arrived in the United States, it was examined by John Doe CBP Officers, and was "incorrectly classified . . . as a firearms silencer". Id., ¶¶30-31.

On or about January 25, 2021, defendant Matthew DellaPenta, a Special Agent ("SA") with the Department of Homeland Security ("DHS") was notified that CBP had intercepted a package containing a firearm silencer destined for Oehler's residence. Id., ¶32.  The John Doe CBP Officers allegedly provided him with "misleading photographs" of the contents of the package that showed a "fuel filter case, fuel filter core and two end caps", but "were insufficient to determine whether the package included other necessary components to convert the fuel filter into an illegal firearm suppressor - i.e., baffles and a converter so that the recipient of the package could attach the fuel filter to a firearm". Id., ¶33.  In turn, SA DellaPenta passed this information along to Theresa Nietzel, a Detective with the Erie County Sheriff's Office, and requested her assistance "to investigate and seize the package". Id., ¶50.

On January 28, 2021, CBP mailed Oehler a "Notice of Seizure", which advised him that the package was seized because it contained an illegal firearm silencer. Id., ¶51.  Oehler also received an "Election of Proceedings" form that provided him with a variety of options, including abandonment of the package. Id., ¶52.  On or about February 1, 2021, Oehler returned the Election of Proceedings form, indicating that he intended to abandon the package and its contents. Id., ¶55.

Despite Oehler's having abandoned the package, SA DellaPenta proceeded with the investigation by conducting surveillance to confirm Oehler's residence. Id., ¶56. Oehler alleges "[u]pon information and belief" that "prior to receiving such a notification from CBP

Officers, John Doe(s), SA DellaPenta and/or Detective Nietzel were aware that . . . Oehler had

an inventory of assault weapons that [they] believed to be illegal" that they "wished to seize".

Id., ¶¶58-59.  He further alleges "upon information and belief" that despite them "knowing or

having strong reason to know that the notification of a firearm silencer" from CBP was false,

they used it to obtain the search warrant to seize the weapons. Id., ¶60.

On February 10, 2021, Detective Nietzel "applied for a search warrant . . . from

[Justice] Christopher J. Burns . . . of the Erie County Supreme Court." Id., ¶57.  Detective

Nietzel's supporting Affidavit stated that she had "received information from a reliable law

enforcement source, and fellow officer, [SA] . . . DellaPenta . . . that [Oehler] . . . will be

receiving a firearm silencer at [his] residence to be delivered during a controlled delivery" ([4-1]

at 3, ¶2), and attached a Supporting Deposition of Fact from SA DellaPenta stating that CBP had

seized a package addressed to Oehler that contained "one firearm silencer in violation of US

Law". Id. at 7.

Detective Nietzel's Affidavit did not mention that the package contained a

purported fuel filter, but the search warrant application attached photographs of the mailing label

of the package identifying the contents as a fuel filter. See id. at 11-13.  The search warrant

application was based on a violation of New York Penal Law §265.02(2), which criminalizes the

"[p]ossession of a firearm silencer", defined as "an attachment for causing the firing of any

gun . . . to be silent, or intended to lessen or muffle the noise of the firing of any gun". Id. at 3,

¶2(d). See New York Penal Law §265.00(2) (defining "firearm silencer").

Oehler alleges that "Detective Nietzel and/or SA DellaPenta" "should have

opened the package to determine its contents, but instead they relied entirely on the conclusion

by unknown CBP Officers, John Doe(s), that the package contained a firearm silencer when in fact they knew or should have known that it did not". Complaint [1], ¶68.

The search warrant for Oehler's residence was executed by Detective Nietzel and Matthew Albanese, a Deputy with the Sheriff's Office, as well SA DellaPenta and fellow DHS SAs Peter Colafranceschi and Edward Gaczewski (id., ¶¶79-80), and resulted in the seizure of a number of firearms. Id., ¶82. Following the search, Oehler was arrested and charged in criminal complaints signed by Detective Nietzel with four counts of possession of an assault rifle in violation of New York Penal Law §265.02(7), and with one count of possession of a firearm silencer in violation of New York Penal Law §265.02(2). Id., ¶¶85, 87, 91. Oehler alleges that Detective Nietzel "knew, or should have known, that the fuel filter [he] purchased . . . was not modified and therefore it is not a firearm silencer". Id., ¶90.

After being provided with a copy of a prior decision from Justice Burns (People v. John Andrews, Case No. 2020-0079) that suppressed evidence from a "bogus search warrant" obtained under similar circumstances - *i.e.*, by falsely alleging that the defendant "was having a firearm silencer delivered to his residence when in fact the item that was delivered was a legal solvent trap", the District Attorney "agreed to dismiss the charges . . . without a trial and with prejudice". Id., ¶¶99-100.

As a result of this alleged conduct, Oehler asserts the following Causes of Action:

-- First: Unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments based on the execution of the search warrant against all defendants under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and 42 U.S.C. §1983;

-- Second:  Unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments for presenting a false affidavit in support of the search warrant against SA DellaPenta, Detective Nietzel, and John Doe CBP Officers under <u>Bivens</u> and 42 U.S.C. §1983;

-- Third:  Failure to intervene in violation of the Fourth and Fourteenth Amendments, as well as state law, against all defendants under the Federal Tort Claims Act ("FTCA"), <u>Bivens</u>, and 42 U.S.C. §1983;

-- Fourth:  Conspiracy to violate rights under the Fourth and Fourteenth Amendments, as well as state law, against all defendants under <u>Bivens</u> and 42 U.S.C. §1983;

-- Fifth:  False arrest in violation of the Fourth and Fourteenth Amendments, as well as state law, against all defendants under the FTCA, <u>Bivens</u>, and 42 U.S.C. §1983;

-- Sixth:  False imprisonment in violation of the Fourth and Fourteenth Amendments, as well as state law, against all defendants under the FTCA, <u>Bivens</u>, and 42 U.S.C. §1983; and

-- Seventh:  Malicious prosecution in violation of the Fourth and Fourteenth Amendments, as well as state law, against all defendants under the FTCA, <u>Bivens</u>, and 42 U.S.C. §1983.


**DISCUSSION**

The standards for dismissal under Rule 12(b)(6) and Rule 12(b)(1) differ. "To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege enough facts to state a claim for relief that is plausible on its face . . . and provide more than a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement." <u>Shara v. Maine-Endwell Central School District</u>, 46 F.4th 77, 82 (2d Cir. 2022).

By contrast, "[i]n resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction. But where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.  In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014).

### A.    The County Defendants' Motion to Dismiss pursuant to Rule 12(b)(6)

#### 1.    Official Capacity, Bivens, FTCA and State Law Claims

Oehler acknowledges that "any state law, Bivens, FTCA, and Monell [v. Department of Social Services of the City of New York, 436 U.S. 658 (1978)] claims against the County Defendants should be dismissed". Oehler's Memorandum of Law [22] at 2 n. 1. [3] Therefore, I recommend that these claims be dismissed.

#### 2.    42 U.S.C. §1983: Unreasonable Search and Seizure Causes of Action

"Ordinarily, . . . [a] search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause." Walczyk v. Rio, 496 F.3d 139, 155-56 (2d Cir. 2007).  "A section 1983 plaintiff challenging a warrant [on the basis that a law enforcement officer materially misled the issuing magistrate] must make the same showing that is required at a suppression hearing under Franks v. Delaware, 438 U.S. 154, 155-56 . . . (1978):  the plaintiff must show that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material

---

[3]    "[T]he Monell standard applies to Plaintiff's official capacity claims." Fate v. Petranker, 2020 WL 3640007, *7 (S.D.N.Y. 2020).

omissions in his application for a warrant, and that such statements or omissions were necessary to the finding of probable cause." Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994). This must be established by a "substantial preliminary showing". Franks, 438 U.S. at 155. *See also* Shabazz v. Johnson City Police Department, 2019 WL 2617016, *3 (N.D.N.Y. 2019).

Arguing that there was no Fourth Amendment violation, the County Defendants seek dismissal of the First and Second Causes of Action.

### a.    Detective Nietzel

The County Defendants argue that Detective Nietzel's supporting Affidavit "was not false. The warrant indicates that the contents of the package was a 'firearm silencer' [and] [Oehler] admits that a fuel filter can be converted into a silencer". County Defendants' Memorandum of Law [4-3] at 15 (*citing* Complaint [1], ¶27) (emphasis in original).[4] However, this argument would require me to disregard the allegations of the Complaint stating that the device was not a "firearm silencer". *See, e.g.*, Complaint [1], ¶¶34, 38, 88, 90, 91.

The Complaint alleges that this falsehood was made with reckless disregard for the truth because Detective Nietzel "should have opened the package to determine its contents, but instead they relied *entirely* on the conclusion by unknown CBP Officers . . . that the package contained a firearm silencer". Id., ¶68 (emphasis added). However, Detective Nietzel was entitled to "rely - *as long as such reliance is reasonable* - on information provided by other law enforcement officials". Hewitt v. City of New York, 2012 WL 4503277, *4 (E.D.N.Y. 2012), aff'd, 544 F. App'x 24 (2d Cir. 2013) (emphasis added); Bernard v. United States, 25 F.3d 98, 103 (2d Cir. 1994) ("the determination of probable cause does not turn on whether Agent # 1's

---

[4]    Curiously, both parties base their arguments on the federal definition of "firearm silencer", which is different from the state definition applicable to the search warrant. *See* County Defendants' Memorandum of Law [4-3] at 15; Oehler's Memorandum of Law [22] at 7.

observations were accurate, but on whether [the arresting officer] was reasonable in relying on those observations"); Saunders v. Cavada, 2024 WL 681228, *7 (E.D.N.Y. 2024) ("when assessing probable cause to arrest, police officers are entitled to rely - as long as such reliance is reasonable - on information provided by other law enforcement officials, including identifications which may later turn out to be mistaken"). There may be reasons why it was unreasonable for Detective Nietzel to rely on the assessment of other law enforcement agencies that the package contained a firearm silencer, rather than a fuel filter, but these are not alleged in the Complaint.

"Unsupported conclusory allegations of falsehood or material omission cannot support a Franks challenge; . . . the plaintiff must make specific allegations". Velardi, 40 F.3d at 573. Without more, Oehler's allegation "[u]pon information and belief" that Detective Nietzel knew or had "reason to know that the notification of a firearm silencer . . . was false" (Complaint [1], ¶¶57; 68), fails to plausibly allege that she knowingly presented false information to Justice Burns.[5] See Kates v. Greece Police Department, 2017 WL 11548970, *4 (W.D.N.Y. 2017) (dismissing unlawful search and seizure claim where "conclusory allegation does not suffice to meet the Franks standard - a 'high one'"). Therefore, I recommend that this claim be dismissed.

**b. Deputy Albanese**

The County Defendants argue that the claims against Deputy Albanese must be dismissed because he "merely executed a facially-valid search warrant". County Defendants' Memorandum of Law [4-3] at 16. I agree.

---

[5]    Although not raised by Oehler as a falsehood or material omission, the Complaint alleges that on February 1, 2021 Oehler provided CBP with a form indicating that he "wished to 'ABANDON' the package and fuel filter" (Complaint [1], ¶55), yet that fact is not mentioned in the subsequent search warrant application, which characterized this as a "controlled delivery" suggesting that the package remained in transit.

"To establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." Kravitz v. Purcell, 87 F.4th 111, 129 (2d Cir. 2023).   The only allegation against Deputy Albanese is that he participated in the execution of the search warrant. *See* Complaint [1], ¶79.  Without any allegations that he participated in obtaining the search warrant or otherwise had reason to know that false information was used to obtain the search warrant, I recommend that this claims as against him be dismissed.

### 3.      42 U.S.C. §1983:  False Arrest/Imprisonment

"False arrest is simply false imprisonment accomplished by means of an unlawful arrest." Jenkins v. City of New York, 478 F.3d 76, 88 n.10 (2d Cir. 2007).  Since "[s]uch claims are one and the same", I have addressed them together. Oudekerk v. Lehoisky, 2024 WL 1693850, *4 (N.D.N.Y. 2024).

Oehler's false arrest claim appears to be premised on two theories.  First, that the evidence supporting the charges was obtained in violation of his "constitutionally protected rights pursuant to a bogus warrant". Complaint [1], ¶86.  This "is essentially a fruit-of-the-poisonous tree argument . . . that . . . has no applicability in the Section 1983 context". Vassiliou v. City of New York, 2021 WL 76916, *7 (E.D.N.Y. 2021). *See also* Townes v. City of New York, 176 F.3d 138, 145 (2d Cir. 1999) ("[t]he fruit of the poisonous tree doctrine cannot link the unreasonable seizure and search to [the plaintiff's] conviction and incarceration because this evidentiary doctrine is inapplicable to civil § 1983 actions"); Arroyo v. City of New York, 683 F. App'x 73, 75 (2d Cir. 2017) (Summary Order) ("[t]he fact that the gun was later suppressed does not preclude a determination that there was arguable probable cause for the arrest").

Second, Oehler alleges that Detective Nietzel falsely charged him with possession of a firearm silencer when she "knew, or should have known, that the fuel filter purchased by [him] was not modified and therefore it was not a firearm silencer". Complaint [1], ¶¶87, 90. That allegation is insufficient to support Oehler's false arrest/imprisonment claims because "[t]he existence of probable cause to arrest for some criminal offense - even an offense other than the one identified by the arresting officer at the time of arrest - defeats a false arrest Fourth Amendment claim". Glasgow v. Beary, 2 F. Supp. 3d 419, 422 (E.D.N.Y. 2014). *See also* Kass v. City of New York, 864 F.3d 200, 206 (2d Cir. 2017) ("[a]n officer is entitled to qualified immunity from a federal false arrest and imprisonment claim if he had arguable probable cause to arrest the plaintiff for any offense, regardless of the offense with which the plaintiff was actually charged"); Banyan v. Sikorski, 2024 WL 2137882, *8 (S.D.N.Y. 2024) ("a false arrest claim fails if there was probable cause to arrest the plaintiff for any offense" (emphasis omitted)).  As the County Defendants argue, Oehler's "own Complaint demonstrates that several assault weapons were found in violation of [the] Penal Law" (County Defendants' Reply Memorandum of Law [25-1] at 10), and there is no allegation that probable cause did not exist to arrest Oehler for those violations. *See* Complaint [1], ¶¶82, 85.  Therefore, I recommend that this claim be dismissed.

### 3.    Malicious Prosecution

To prevail on a §1983 claim for malicious prosecution, a plaintiff must show "a seizure or other perversion of proper legal procedures implicating his personal liberty and privacy interests under the Fourth Amendment", and that "criminal proceedings were initiated or continued against him, with malice and without probable cause, and were terminated in his favor". Lanning v. City of Glens Falls, 908 F.3d 19, 24 (2d Cir. 2018).

####   a.    Detective Nietzel

The County Defendants argue that there was "probable cause for the arrest" and that Oehler has "set forth only vague and conclusory assertions . . . that defendants acted with malice". County Defendants' Memorandum of Law [4-3] at 22.  Neither of these arguments are persuasive.

In contrast to Oehler's false arrest claim, "the defendant must have possessed probable cause as to *each offense charged*" to support a malicious prosecution claim. Costello v. Milano, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014) (emphasis added); Knox v. Khan, 2019 WL 1099952, *8 (E.D.N.Y. 2019) ("to defeat a malicious prosecution claim, defendants must have reasonable or probable cause for each offense charged"); D'Angelo v. Kirschner, 288 F. App'x 724, 726-27 (2d Cir. 2008) (Summary Order) ("a finding of probable cause to arrest as to one charge does not necessarily defeat a claim of malicious prosecution as to other criminal charges that were resolved in the plaintiff's favor").

As discussed above, the Complaint does not allege that probable cause was lacking for the four charges against Oehler for violating New York Penal Law §265.02(7), which criminalizes the possession of certain assault rifles. *See* Complaint [1], ¶¶85-86.  Oehler only challenges the existence of probable cause for the remaining charge for violating New York Penal Law §265.02(2), which criminalizes the possession of a firearm silencer. Id., ¶87.

The Complaint alleges that following the execution of the search warrant and presumably the opening of the package, Detective Nietzel "knew or should have known" that Oehler was "not in possession of a firearm silencer; rather, he purchased and was in possession of a fuel filter that, when unmodified, is legal to own". Id., ¶¶88, 90.  Based solely on the allegations before me, and without the benefit of the accusatory instrument, and supporting

papers, or any other evidence, I conclude that Oehler has sufficiently pled a lack of probable cause for the unlawful possession of a firearm silencer charge.[6] At this stage, the absence of probable cause also gives rise to the existence of malice. *See* Johnson v. City of Rochester, 2023 WL 8237560, *8 (W.D.N.Y. 2023) ("[g]enerally, the lack of probable cause - while not dispositive - tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause").

Alternatively, the County Defendants rely on qualified immunity for dismissal. *See* County Defendants' Memorandum of Law [4-3], Point I. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." District of Columbia v. Wesby, 583 U.S. 48, 62-63 (2018). To be "clearly established", the law must be "sufficiently clear that every reasonable official would understand that what he is doing is unlawful." Id. at 63. "In the context of . . . malicious prosecution claims, an officer is entitled to qualified immunity if he had either probable cause or arguable probable cause". Dufort v. City of New York, 874 F.3d 338, 354 (2d Cir. 2017).

The Second Circuit has noted that since "on a Rule 12(b)(6) . . . motion, the facts supporting the qualified immunity defense must appear on the face of the complaint, asserting qualified immunity as a defense in the earliest stages of litigation, before development of a relevant factual record, usually fails to result in dismissal of the complaint". Therefore, it "has admonished defendants moving to dismiss a suit by reason of qualified immunity" that they "would in almost all cases be well advised to move for summary judgment, rather than for

---

[6]    It appears from the Complaint that Oehler was charged with possession of the fuel filter that was the subject of the controlled delivery, but this is not expressly alleged.

dismissal under Rule 12(b)(6)". <u>Pourkavoos v. Town of Avon</u>, 823 F. App'x 53, 59 (2d Cir. 2020) (Summary Order).

This case is not unique. While there may be arguments following discovery as to why Detective Nietzel is entitled to qualified immunity for the malicious prosecution claim, at this stage the allegations of the Complaint fail to establish her entitlement to that relief.

### b.    Deputy Albanese

The County Defendants argue that there is no allegation that Deputy Albanese "initiated or continued a criminal prosecution; only that defendant Nietzel did so". County Defendants' Memorandum of Law [4-3] at 22. I agree. The sole allegation against Deputy Albanese is that he was among the law enforcement officers who executed the search warrant at Oehler's residence. <i>See</i> Complaint [1], ¶79. Oehler argues that Deputy Albanese "was listed as an officer who assisted in . . . [his] arrest" (Oehler's Memorandum of Law [22] at 15), but even if that allegation was sufficient to support a malicious prosecution claim against him, it is not contained in the Complaint. <i>See</i> <u>Fischer v. Forrest</u>, 286 F. Supp. 3d 590, 604 (S.D.N.Y. 2018), <u>aff'd</u>, 968 F.3d 216 (2d Cir. 2020) ("[i]t is black letter law that a plaintiff may not alter his pleadings through a brief"). Therefore, I recommend this claim be dismissed as against Deputy Albanese.

### 4.    Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit

collaborator' in the illegality." <u>Cornell v. Village of Clayton</u>, 2023 WL 5965431, *8 (N.D.N.Y. 2023).

"To state a failure-to-intervene claim, a plaintiff must allege that (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene." <u>Debellis v. Soloman</u>, 2022 WL 902635, *4 (S.D.N.Y. 2022).

### a.    Detective Nietzel

As the primary actor in the relevant events (*i.e.*, the applicant for the search warrant, arresting officer, and the criminal complainant), it is not entirely clear how Detective Nietzel failed to intervene in the constitutional violations of others.  The only conduct that Oehler points to as constituting a failure to intervene is Detective Nietzel's alleged failure to "review . . . [the] contents [of the package] before assisting the federal officers with obtaining a search warrant". Oehler's Memorandum of Law [22] at 12.

However, for the reasons discussed above, it is not sufficiently alleged that Detective Nietzel unreasonably relied on the information received from SA DellaPenta concerning the contents of the package.  As pled, there is nothing to suggest that a reasonable officer in Detective Nietzel's position would know that Oehler's constitutional rights were being violated.  Therefore, I recommend that this claim be dismissed as against Detective Nietzel.

### b.    Deputy Albanese

The only allegation of the Complaint against Deputy Albanese is that he participated in the execution of the search. *See* Complaint [1], ¶79.  This falls well short of

stating a failure to intervene claim against him.  Therefore, I recommend that this claim be dismissed as against Deputy Albanese.

**5.    Conspiracy**

"To state a claim for § 1983 conspiracy, a plaintiff must allege (1) an agreement between two or more state actors . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, causing damages." Eldars v. State University of New York at Albany, 2021 WL 4699221, *3 (2d Cir. 2021) (Summary Order). "Complaints containing only conclusory, vague, or general allegations that the defendants engaged in a conspiracy fail to state a claim." Id.

"A conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).  However, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end". Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003).

The Complaint fails to allege a factual basis supporting the existence of any express or tacit agreement to unlawfully search, arrest, or prosecute Oehler.  Even if the failure of Detective Nietzel to open the package or to more closely review the photographs and confirm the existence of a firearm silencer could be considered reckless, lacking are sufficient allegations that there was any agreement between law enforcement officers to deprive Oehler of his constitutional rights. *See* Beechwood Restorative Care Center v. Leeds, 436 F.3d 147, 154 (2d Cir. 2006) ("[c]ooperation between state and federal bureaucracies acting in their regulatory spheres supports no inference that the federal actors acted with an improper motive").

**B.      The Individual Federal Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) and For Substitution of a Party pursuant to 28 U.S.C. §2679**

**1.      FTCA, Fourteenth Amendment, and 42 U.S.C. §1983 Claims**

Oehler does not oppose the Individual Federal Defendants' motion to the extent that it seeks to dismiss the Fourteenth Amendment claims, as well as those being asserted under 42 U.S.C. §1983 and the FTCA. *See* Oehler's Memorandum of Law [23] at 2 n. 1.  Nor does he offer any opposition to the Individual Federal Defendants' motion to substitute the United States as the proper defendant for his state law claims pursuant to 28 U.S.C. §2679(d)(1).[7]  Therefore, I recommend that these claims be dismissed, and that the motion for substitution be granted.

**2.      <u>Bivens</u> Claims**

42 U.S.C. §1983 "entitles an injured person to money damages if a state official violates his or her constitutional rights", but "Congress did not create an analogous statute for federal officials." <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 130 (2017).  In <u>Bivens</u> that the Supreme Court first "held that it had authority to create 'a cause of action under the Fourth Amendment' against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." <u>Egbert v. Boule</u>, 596 U.S. 482, 490 (2022).  "Over the following decade, the Court twice again fashioned new causes of action under the Constitution - first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, *see* <u>Davis v. Passman</u>,

---

[7]      28 U.S.C. §2679(d)(1) states that "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant."

442 U.S. 228 . . . (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, *see* Carlson v. Green, 446 U.S. 14 . . .  (1980)." Id. at 490-91.

However, "[s]ince deciding Carlson in 1980, additional causes of action arising under Bivens have not been implied". Smith v. Arrowood, 2023 WL 6065027, *3 (W.D.N.Y. 2023).  Most recently in Egbert, *supra*, the Supreme Court addressed the availability of Bivens civil remedies for Fourth Amendment violations.  It reiterated the court's previous two-part test for establishing Bivens liability: first, the court asks "whether the case presents a new Bivens context - *i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action." Egbert, 596 U.S. at 492.  "Second, if a claim arises in a new context, a Bivens remedy is unavailable if there are any 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." Id.

However, it explained that "those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy". Id. The creation of "a cause of action under Bivens" remains "a disfavored judicial activity", because "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts". Id. at 486, 491. "If there is even a single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy." Id. at 492.

### a.     New Context

A new context exists where the claim is "different in a meaningful way from previous Bivens cases decided by th[e] [Supreme] Court". Abbasi, 582 U.S. at 139.  The line of demarcation for what qualifies as a "new context" has been described as a "low threshold". Quinones-Pimentel v. Cannon, 2022 WL 826344, *22 (D.P.R. 2022), aff'd, 85 F.4th 63 (1st Cir.

-18-

2023). *See also* Elhady v. Unidentified CBP Agents, 18 F.4th 880, 883 (6th Cir. 2021) ("[t]he context is new if it differs in virtually any way from the Bivens trilogy" - *i.e.*, Davis and Carlson, *supra*). The Supreme Court has identified a number of ways that a case might differ in a meaningful way, including:

> "the rank of officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusions by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider."

Abbasi, 582 U.S. at 139-40.

In Bivens, the Court recognized an implied damages remedy against federal officers arising from a warrantless search of a residence and warrantless seizure by agents of the Federal Bureau of Narcotics (now the Drug Enforcement Agency ("DEA")). *See* 403 U.S. at 389-90. There are some commonalities between the facts of Bivens and those alleged here. Oehler focuses on the fact that in Bivens the same "Constitutional right [was] at issue - the right to be free from unreasonable search and seizures under the Fourth Amendment". Oehler's Memorandum of Law [23] at 4. However, that commonality is insufficient: courts must "look beyond the constitutional provisions invoked". Hernandez v. Mesa, 589 U.S. 93, 103 (2020). *See also* Egbert, 596 U.S. at 495 ("[w]hile Bivens and this case do involve similar allegations of excessive force and thus arguably present almost parallel circumstances or a similar mechanism of injury, . . . these superficial similarities are not enough to support the judicial creation of a cause of action").

There are meaningful differences between the facts in Bivens and the allegations presented here. For instance, unlike Bivens, which addressed the conduct of the DEA, this case addresses the conduct of CBP and HSI employees. "Difference[s] in agency is now sufficient,

after [Egbert], to create a new context." Sigalovskaya v. Braden, 2023 WL 6385761, *5

(E.D.N.Y. 2023) ("the claim involves a new category of defendants because they are not agents

of the Federal Bureau of Narcotics, but instead are HSI special agents"); Karman v. U.S.

Customs & Border Protection, 2023 WL 5806313, *6 (N.D.N.Y. 2023), adopted in relevant part,

2024 WL 123780 (N.D.N.Y. 2024) ("[f]ollowing the Supreme Court's decisions in Hernandez

and Egbert, district courts have concluded that a Bivens action does not exist for claims against

federal immigration officials"); Lewis v. Westfield, 640 F. Supp. 3d 249, 253 (E.D.N.Y. 2022),

aff'd, 2023 WL 8613873 (2d Cir. 2023) ("[t]he defendants are Deputy Marshals, rather than

federal narcotics agents"). See also Cohen v. Trump, 2024 WL 20558, *2 (2d Cir. 2024)

(Summary Order) (a suit against Bureau of Prisons and United States Probation and Pretrial

Services "involves 'new categor[ies] of defendants' that were not contemplated in Bivens").

       Additionally, the malicious prosecution and failure to intervene claims, neither of

which were at issue in Bivens, also present new contexts. See Sigalovskaya, 2023 WL 6385761

at *4 ("[p]laintiff's malicious prosecution and failure to intervene claims are new contexts

because Bivens did not involve a malicious prosecution or failure to intervene claim"). The

same holds true for Oehler's conspiracy claim (see Milton v. McClintic, 2022 WL 4852825, *2

(W.D.N.Y. 2022)),[8] as well as his Fourth Amendment unreasonable search claims. See

Annappareddy v. Pascale, 2021 WL 1603987 (4th Cir. 2021) ("[w]hat Bivens involved was the

Fourth Amendment right to be free of unreasonable warrantless searches and seizures; this case,

by contrast, involves searches and a seizure conducted with a warrant. It thus implicates a

distinct Fourth Amendment guarantee . . . governed by different legal standards"). See also

---

[8]     For the reasons discussed above and those argued by the Individual Federal Defendants
(Individual Federal Defendants' Memorandum of Law [16-1] at 21-22; Reply Memorandum of Law [26]
at 8-9), I conclude that Oehler's conspiracy claim is also not sufficiently pled.

Bissereth v. United States, 2023 WL 4373888, *8 (D. Mass. 2023) ("since Abbasi and Egbert, courts have generally held that the existence of a warrant makes a case 'meaningfully different' from Bivens, because the legal mandate under which defendants were operating diverges from the warrantless narcotics-investigation circumstances in Bivens"); Cuney v. Choi, 2022 WL 16743984, *4 (N.D.N.Y. 2022) ("[p]laintiff's claim that Defendant exceeded the scope of warrants authorizing the search of electronic data is meaningfully different from the warrantless search and arrest in Bivens, and presents a new context").

Oehler's reliance on Meeks v. Larsen, 611 F. App'x 277 (6th Cir. 2015) and Powell v. United States, 2022 WL 1645545 (S.D.N.Y. 2022), both decided before Egbert, do not compel a different conclusion. See Oehler's Memorandum of Law [23] at 5-6.

### b.    Special Factors

"If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new Bivens cause of action." Egbert, 596 U.S. at 493. Oehler acknowledges that the Individual Federal Defendants "are correct that DHS's administrative grievance procedure provides an 'alternative remedy' to Bivens, and would be a 'special factor' counseling against the application of Bivens". Oehler's Memorandum of Law [23] at 2 n. 1. Based on that concession, I recommend that Oehler's Bivens claims against the Individual Federal Defendants be dismissed.


### C.    Oehler's Motion to Strike

When deciding a Rule 12(b)(6) motion to dismiss, the court the court may look beyond the allegations of the Complaint to the "[1] documents attached to the complaint as an exhibit or incorporated by reference; [2] matters of which judicial notice may be taken; and [3]

documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are

'integral' to the complaint." Tal v. Computech International, Inc., 2023 WL 7347219, *3

(E.D.N.Y.), adopted, 2023 WL 7339051 (E.D.N.Y. 2023).  All other materials presented in

connection with a Rule 12(b)(6) motion are considered extraneous and "the court must, in its

discretion, either exclude these materials or convert the motion to one for summary judgment."

Herrnson v. Hoffman, 2020 WL 6323637, *1 (S.D.N.Y. 2020). *See also* Rule 12(d).  However,

where "the court simply refers to supplementary materials, but does not rely on them or use them

as a basis for its decision, the 12(b)(6) motion is not converted into a motion for summary

judgment". Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999).

The Complaint [1] makes the following allegations concerning the ATF's memos

and guidance concerning fuel filters:

> "39. . . . ATF has issued memos and other forms of guidance to Federal law
> enforcement officers, including CBP officers, telling them to target packages with
> fuel filters.
>
> 40. Upon information and belief, as part of these memos and guidance, ATF
> instructs CBP and other law enforcement agents that they should target packages
> containing fuel filters and further that they should take misleading photographs of
> the fuel filter so that it appears to be a firearm silencer, even though ATF knows
> that other components and further steps are required to convert the fuel filter into
> an illegal firearm silencer.
>
> 41. ATF further instructs CBP and other law enforcement officers to use those
> misleading photographs and send to local law enforcement agents, along with a
> false notification that the unmodified fuel filter is in fact a firearm silencer."

In support of its motion to dismiss the Complaint, the United States relies on the

Declaration of Gregory Stimmel, the Acting Deputy Division Chief of the Firearms and

Ammunition Technology Division of the ATF ("FATD") [17-2].  The Declaration attaches

FATD Technical Bulletins 17-01 and 20-01, which include "examples and pictures of common

firearm silencers marketed as inline fuel filters." Stimmel Declaration [17-2], ¶5.  Among the

examples is a photograph of a device marketed as the NAPA 4003 filter that appears nearly identical to the photograph of the seized device contained in the search warrant. *Compare* Stimmel Declaration [17-2], ¶7 *with* Exhibit 3 to the search warrant [4-1] at 13.  According to Stimmel, this device has "no fluid filtering capability" and has a "monocore silencer baffle" that allows it to function as a firearm silencer without any modifications (id., ¶8), in contradiction to the allegations of the Complaint that an unmodified fuel filter could not function as a firearm silencer. *See* Complaint [1], ¶¶27, 28, 34.

   Oehler seeks to strike the Stimmel Declaration and attachments [20].  The United States responds that Technical Bulletins 17-02 and 20-01 are incorporated by reference in the Complaint and that the Stimmel Declaration merely authenticates them. *See* United States' Opposition [28], Points I and II.

   "For a document to be incorporated by reference, the complaint must make *clear, definite, and substantial references* to the document." <u>SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.</u>, 2023 WL 3919450, *2 (S.D.N.Y. 2023) (emphasis added).  The vague references in the Complaint to "memos and guidance" fall short of that standard.  The term "Technical Bulletin" does not appear in the Complaint, much less the specific Technical Bulletins the United States relies upon.  Therefore, I conclude that the Technical Bulletins are not incorporated by reference into the Complaint.  Nor do I see any reason to consider the Stimmel Declaration which is offered to authenticate the Technical Bulletins.

   Although I have the option of converting the United States' Rule 12(b)(6) motion into one for summary judgment, it does not request that occur here, and states that it is not offering the Technical Bulletins "for their truth, or for any purpose contrary to the Rule 12(b)(6) standard". United States' Opposition [28] at 6.  At most, the United States asks that the

Technical Bulletins be considered as "supplementary information". Id. at 7. Therefore, I recommend that Oehler's motion to strike be granted, with the United States reserving its right to file a summary judgment motion based on the Technical Bulletins and other evidence.

## D.   The United States' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6)

### 1.   Bivens, 42 U.S.C. §1983, and State Law Claims

Oehler clarifies that he only brought suit against the United States "under the FTCA", and acknowledges that "[t]he United States is correct that any state law, Section 1983, or Bivens actions against it must be dismissed because it has not waived sovereign immunity." Oehler's Memorandum of Law [24] at 2 n. 1.   Therefore, I recommend that those claims be dismissed.

### 2.   FTCA Claims

The FTCA waives "sovereign immunity of the United States for certain torts committed by federal employees' acting within the scope of their employment." Brownback v. King, 592 U.S. 209, 212 (2021).   "A claim is actionable under the FTCA if it alleges the six elements of [28 U.S.C.] § 1346(b), which are that the claim be: '[1] against the United States, [2] for money damages, [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [and]  [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Id.

The FTCA's waiver of sovereign immunity is also subject to enumerated exceptions. See 28 U.S.C. §2680.  "Plaintiffs bear the initial burden of showing that their claims

against the United States fall within the FTCA's limited waiver of sovereign immunity".
Cangemi v. United States, 13 F.4th 115, 130 (2d Cir. 2021).

The Complaint [1] asserts FTCA claims for failure to intervene, false arrest, false imprisonment, and malicious prosecution. Id. at Third, Fifth, Sixth and Seventh Causes of Action.

### a.    Failure to Intervene

The United States argues that Oehler's "failure to intervene allegations cannot support a claim against the United States under the FTCA" because "[n]o such tort exists under New York State law". Oehler's Memorandum of Law [17-1] at 11.  "[F]or liability to arise under the FTCA, a plaintiff's cause of action must be comparable to a cause of action against a private citizen' recognized in the jurisdiction where the tort occurred. This 'private analogue' requirement asks whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." McGowan v. United States, 825 F.3d 118, 125 (2d Cir. 2016)

Since "[o]rdinary citizens have no duty under federal or New York law to intervene to prevent or stop . . . a constitutional violation . . . . this is not a claim with respect to which a private individual could be held liable under New York law, so as to support a claim against the U.S. under the FTCA". James v. City of Rochester, 673 F. Supp. 3d 279, 291 (W.D.N.Y. 2023). See also Ashanti v. City of New York, 77 Misc. 3d 1225(A), *7 (N.Y. Sup. Ct. 2023), aff'd, 225 A.D.3d 443 (1st Dept. 2024) ("[p]laintiff acknowledges that failure to intervene does not exist under New York State law"); Simon v. City of New York, 2015 WL 2069436, *2 n. *4 (S.D.N.Y. 2015) ("there is no authority for the proposition that private parties have an affirmative duty to intervene in preventing alleged constitutional violations").

Although Oehler cites to <u>Wilson v. City of New York</u>, 161 A.D.3d 1212, 1215 (2d Dept. 2018) (*see* Oehler's Memorandum of Law [24] at 16), <u>Wilson</u> addressed a failure to intervene claim brought pursuant to 42 U.S.C. §1983.  Therefore, I recommend that this claim be dismissed for lack of subject matter jurisdiction. *See* <u>Finelli v. Drug Enforcement Agency</u>, 1993 WL 51105, *5 (S.D.N.Y. 1993) ("[t]he United States has not waived its sovereign immunity with respect to the[ ] constitutional tort claims and, thus, no subject matter jurisdiction exists against the United States on such claims").

### b.    False Arrest/Imprisonment and Malicious Prosecution Claims Based on the Conduct of the HSI SAs

The United States argues that the false arrest/imprisonment and malicious prosecution claims "under the FTCA against the United States based upon conduct by HSI [SAs] must be dismissed because a neutral magistrate found that probable cause supported the actions that [Oehler] alleges were unlawful". United States' Memorandum of Law [17-1] at 11.

"Where an *arrest warrant* has been issued by a court of competent jurisdiction, there is a presumption that the arrest under that warrant was made on probable cause, thus precluding liability for false arrest, false imprisonment, or malicious prosecution". <u>Martinez v. City of New York</u>, 153 A.D.3d 803, 806 (2d Dept. 2017) (emphasis added).  Here, however, there is no allegation that Oehler's arrest was pursuant to an arrest warrant.  The only warrant alleged in the Complaint - and the one that the United States appears to rely upon - granted authority to search Oehler's residence, not to arrest him.  Therefore, the United States' reliance on the presumption of probable cause is misplaced.

The United States also relies on Technical Bulletin 20-01 to counter the Complaint's allegations that modifications to the fuel filter shipped to Oehler would be required in order to convert it to a firearm silencer. *See* United States' Memorandum of Law [17-1] at 13.

Although that appears to be persuasive evidence supportive of its position, I have recommended that the Bulletin be stricken for purposes of this motion.

The United States also points to the federal definition of "firearm silencer" (18 U.S.C. §921(A)(25)) to argue that "any of the individual parts [shipped to Oehler] fit[ ] the definition of firearm silencer". Id. at 13-14.[9]  Although Oehler also relies on the federal definition of firearm silencer (Oehler Memorandum of Law [24], §I), neither the search warrant nor the criminal complaints relate to the federal offense, and instead charged Oehler with a violation of New York Penal Law §265.02(2) that is based on the definition of "firearm silencer" set forth in New York Penal Law §265.00(2).

The United States argues that the court "need not to assume [that Oehler] is correct about the law regarding fuel filters". United States' Reply Brief [27] at 3.  I agree that courts "are not bound to accept as true a legal conclusion couched as a factual allegation", Papasan v. Allain, 478 U.S. 265, 286 (1986), but that is not what has occurred here.  Oehler makes a variety of factual allegations supportive of the fact that probable cause was lacking that he possessed a firearm silencer.  For instance, he alleges that he purchased a "fuel filter" through a "commercial website" for "one of his vehicles", and that the fuel filter he purchased "came with only one end cap drilled", and [t]herefore, unmodified, could not possibly be used as a firearm silencer". Complaint [1], ¶¶22, 29.

There may be other arguments sufficient to warrant dismissal of these claims as pled or evidence sufficient to entitle the United States to summary judgment, but they have not

---

[9]      Contrary to the United States' own argument, Technical Bulletin 17-02, states that "the statute speaks of a device 'for' silencing or muffling.  Therefore, mere possession of a 'solvent trap' or components which *could* be used in the assembly of a firearm silencer does not necessary constitute possession of a firearms silencer.  Intent must be demonstrated or communicated." [17-1] at 11 (emphasis in original).

been argued or presented at this stage.  Therefore, I recommend that this portion of the motion be denied.

### c.        Claims Based on the Conduct of the John Doe CBP Officers

In seeking dismissal of these claims the United States raises a number of subject matter jurisdiction challenges.  In addition to its argument that Oehler failed to timely satisfy the FTCA's presentment requirements, the United States contends that his FTCA claims are barred by the due care and detained goods exceptions (28 U.S.C. §§2680(a), (c)), and because his claims lack a private party analogue. *See* United States' Memorandum of Law [17-1] at §§IV, VI-VIII.  It also challenges the facial sufficiency of the Complaint. *See* id., §V.

Generally, "[a] court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." Dutrow v. New York State Gaming Commission, 2014 WL 11370355, *3 (E.D.N.Y. 2014), aff'd, 607 Fed. Appx. 56 (2d Cir. 2015); Sinochem International Co. Ltd. v. Malaysia International Shipping Corp., 549 U.S. 422, 430-31 (2007) ("a federal court . . . may not rule on the merits of a case without first determining that it has . . . subject-matter jurisdiction"). Therefore, I will first address each of the United States' jurisdictional challenges. *See* United States' Memorandum of Law [17-1], §§IV, VI-VIII.

### i.        Oehler's Compliance with the FTCA's Presentment Requirements

"If a plaintiff fails to comply with the FTCA's requirements, the court lacks subject matter jurisdiction." Santiago v. United States, 2004 WL 758196, *1 (E.D.N.Y. 2004). Among those requirements, the FTCA states that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years

after such claim accrues *or* unless action is begun within six months after the date of mailing, by

certified or registered mail, of notice of final denial of the claim by the agency to which it was

presented". 28 U.S.C. §2401(b) (emphasis added).

Notwithstanding its "use of the word 'or' to join its requirements, FTCA

claimants must comply with both the two-year filing of claim *and* the six-month filing of suit

requirements". Gutierrez-Flores v. U.S. Department of Justice, 2024 WL 343137, *4 (W.D.N.Y.

2024) (emphasis added); United States v. Wong, 575 U.S. 402, 405 (2015); Willis v. United

States, 719 F.2d 608, 610 (2d Cir. 1983); Ellison v. United States, 531 F.3d 359, 363 (6th Cir.

2008). As the Second Circuit has explained:

> "It is beyond dispute that 'or' generally is a disjunctive . . . . However, . . . '[w]ere
> we to read the 'or' in the section as really intending the disjunctive, a claimant who
> filed a claim with the agency within two years would then be able to bring it to a
> District Court at any remote future time after the agency denied him relief.' It could
> also be said that such a reading would mean that there would be no time limitation
> on the filing of claims with agencies".

Willis, 719 F.2d at 610.

The United States' motion focuses on Oehler's compliance with the two-year

claim presentment deadline. First, it argues that Oehler never filed an administrative claim with

CBP. *See* United States' Memorandum of Law [17-1] at 16. Although the FTCA requires the

claim to "be presented to the Federal agency whose activities gave rise to the claim" (28 C.F.R.

§14.2(b)(1)), there is "no requirement that such a claim be filed with every affected agency".

Thomas v. United States, 2005 WL 757268, *7 (E.D. La. 2005), aff'd, 176 F. App'x 474 (5th

Cir. 2006). "When more than one Federal agency is or may be involved in the events giving rise

to the claim, an agency with which the claim is filed shall contact all other affected agencies in

order to designate the single agency which will thereafter investigate and decide the merits of the

claim." 28 C.F.R. §14.2(b)(2). So long as the claim provides notice of the "potential

involvement" of another agency, it is deemed to have also been filed with that agency.

Mohammad v. VA Rooming House, 2008 WL 428011, *4 (E.D.N.Y. 2008).

       The United States argues that neither Oehler's claim (form SF-95) dated January

20, 2023 ([1-1] at 4) nor cover letter (id. at 2) identified any CBP involvement.  However, the

SF-95 attached and expressly referenced paragraphs of a Complaint dated January 20, 2023 that

is substantially similar to the Complaint that was ultimately filed in this action, which identified

John Doe CBP Officers as defendants and identified their alleged conduct. [1-1] at 7-32.  Since

even a cursory review of that Complaint reveals the existence of an alleged injury resulting from

the conduct of unidentified CBP Officers, I conclude that Oehler is deemed to have filed his

claim with CBP. *Compare with* Green v. United States, 2022 WL 966864, *9 (S.D. 2022)

("[r]eading the administrative claim in its entirety, Plaintiffs simply failed to put the DVA on

notice that they were also asserting claims against the DOD. One passing reference to a singular

act or omission by a DOD employee was not sufficient to notify the DVA of a claim against the

DOD").

       As to the timeliness of that claim, Oehler does not dispute that ICE's receipt of

the claim, rather than the date the claim was mailed, governs its timeliness (*see* Cooke v. United

States, 918 F.3d 77, 82 (2d Cir. 2019); Joseph v. United States, 2024 WL 360663, *4 (E.D.N.Y.

2024)), or that his claim was received by ICE on January 31, 2023 (Litz Declaration [17-4], ¶8).

*See* United States' Memorandum of Law [17-1] at 15-17.  Instead, he disputes the accrual date of

his claim against the John Doe CBP Officers.  The United States argues that "the last of CBP's

alleged tortious conduct occurred on January 25, 2021", when it allegedly provided false and

misleading information concerning the contents of the package to HSI. United States'

Memorandum of Law [17-1] at 17. *See* Complaint [1], ¶¶32-33.  By contrast, Oehler argues that

"it is improper to cut off the John Doe defendants' liability on January 25, 2021, the last day they communicated with their fellow officers regarding the contents of the package". Oehler's Memorandum of Law [24] at 9. Although neither party offers much on this issue, I conclude that Oehler has the better argument.

"Federal law determines the date that an FTCA claim accrues." A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 139 (2d Cir. 2011). Generally, "[a]n FTCA claim accrues at the time of the plaintiff's injury". Tourchin v. United States, 2009 WL 39007, *1 (2d Cir. 2009) (Summary Order); Ramos ex rel. Diaz v. Bronx-Lebanon Hospital Center, 2011 WL 4634191, *1 (S.D.N.Y. 2011) ("[t]he FTCA's two-year statute of limitations generally begins to run at the time of injury"). Here, Oehler did not have notice of his injury until the search was executed on or about February 11, 2021, within two years of when ICE received his claim. See James v. County of Albany, N.Y., 1993 WL 539546, *1 (N.D.N.Y. 1993) ("[i]n the case of false arrest or unreasonable search and seizure, the cause of action accrues on the day of the arrest or search and seizure"). Therefore, I conclude that Oehler satisfied the FTCA's presentment requirements.

### ii.    Private Analogue

The United States argues that there can be no private analogue here "[b]ecause only the federal government has the authority to enforce federal laws at ports of entry, and make customs determinations concerning lawful entry, detention, and seizure of goods and merchandise". United States' Memorandum of Law [17-1] at 25. However, "all Government activity is inescapably 'uniquely governmental' in that it is performed by the Government". Indian Towing Co. v. United States, 350 U.S. 61, 67 (1955). As the Second Circuit has explained, "[t]o say that the challenged action is one that only the federal government does in

fact perform does not necessarily mean that no private analogue exists". <u>Liranzo v. United States</u>, 690 F.3d 78, 94 (2d Cir. 2012). "'[T]he presence of identical private activity' [is] not required to find a private analogue, because the FTCA's statutory phrase 'under *like* circumstances' does not mean 'under the *same* circumstances.'" <u>Id.</u> (*quoting* <u>Indian Towing Co.</u>, 350 U.S. at 64, 67 (emphasis in original)).

Moreover, under the FTCA's private analogue requirement, "a plaintiff's *cause of action* must be comparable to a *cause of action* against a private citizen recognized in the jurisdiction where the tort occurred." <u>Watson v. United States</u>, 865 F.3d 123, 134 (2d Cir. 2017) (emphasis added). "This requires that the claims have 'private-sector analogue[s]' in the relevant state's tort law." <u>Leticia v. United States</u>, 2023 WL 7110953, *19 (E.D.N.Y. 2023) (*quoting* <u>United States v. Olson</u>, 546 U.S. 43, 45 (2005)).

The causes of action here are for false arrest, false imprisonment and malicious prosecution and the government fails to make any argument that there is not a private analogue in New York State's tort law for those offenses. *See* <u>Liranzo</u>, 690 F.3d at 96 ("the FTCA explicitly waives sovereign immunity for '*any* claim' based on the 'acts or omissions of investigative or law enforcement officers' 'arising . . . out of . . . false imprisonment [and] false arrest.' 28 U.S.C. § 2680(h) (emphasis added). The plain language of the statute suggests that the United States has indeed waived its sovereign immunity from suit as to Liranzo's 'claim," which 'aris[es] . . . out of . . . false imprisonment [and] false arrest'"). Therefore, I conclude that Oehler satisfies the private analogue requirements.

### iii.    Due Care Exception

The FTCA waiver of sovereign immunity excludes "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a

statute or regulation, whether or not such statute or regulation be valid". 28 U.S.C. §2680(a). "This exception is part of the statutory scheme which is intended to assure that 'the legality of a rule or regulation should (not) be tested through the medium of a damage suit for tort.'" Myers & Myers, Inc. v. U. S. Postal Service, 527 F.2d 1252, 1261 (2d Cir. 1975).

       To determine whether the due care exception bars a particular claim, both parties agree that the two-part test of Welch v. United States, 409 F.3d 646, 652 (4th Cir. 2005) applies. "Under Welch, a court first 'determines whether the statute or regulation in question specifically prescribes a course of action for an officer to follow' and, second, if it finds in the affirmative, 'inquires as to whether the officer exercised due care in following the dictates of that statute or regulation.'" D.J.C.V. v. United States, 605 F. Supp. 3d 571, 589 (S.D.N.Y. 2022).

       The United States argues that "the CBP John Doe(s) are alleged to have targeted a shipment, conducted a physical examination of the shipment and device contained therein, and determined that the device's components were designed and intended for use in assembling or fabricating a firearm silencer". United States' Memorandum of Law [17-1] at 21.  Since this was contraband, "pursuant to 19 U.S.C. § 1595a(c)(1)(C) - which specifically prescribes a course of action to be taken in this instance - a CBP officer [was] mandated to seize" it. Id. See also id. at 22 ("CBP had both the authority and, indeed, the responsibility to seize the imported merchandise pursuant to 19 U.S.C. § 1595a(c)(1)(C)").

       That may be so, but Oehler's claims against the John Doe CBP Officers do not arise from the seizure of the fuel filter, but rather from the alleged false notification they provided to other law enforcement officers that Oehler had received a firearm silencer.  The United States points to no statute or regulation that required them to make such a notification. See Oehler's Memorandum of Law [24] ("the United States fail[s] to identify a statute that

permitted the federal officers' conduct").  Therefore, I conclude that this exception does not

apply.

### iv.    The Detained Goods Exception

The FTCA specifically excepts from its waiver of sovereign immunity "[a]ny

claim arising in respect of . . . the detention of any goods, merchandise, or other property by any

officer of customs or excise or any other law enforcement officer". 28 U.S.C. §2680(c).[10] Oehler

argues that the detained good exception "'does not apply where the goods [*i.e.*, fuel filter] are no

longer in the possession of the government, and therefore cannot be regarded as being

detained.'" Mora v. United States, 955 F.2d 156, 160 (2d Cir. 1992) (*citing* Alliance Assurance

Co. v. United States, 252 F.2d 529, 533-34 (2d Cir. 1958))." Oehler's Memorandum of Law [24]

at 12.

Oehler's argument is not persuasive.  In Alliance Assurance, the Second Circuit

held that §2680(c) "does not and was not intended to bar actions based on the negligent

destruction, injury or loss of goods in the possession or control of the customs authorities". 252

F.2d at 534.  However, in Kosak v. United States, 465 U.S. 848, 854–62 (1984), the Supreme

Court rejected that interpretation of § 2680(c), under which claims for loss of detained property

would not be excluded from the FTCA.  Although the Second Circuit subsequently "endorsed its

holding of Alliance Assurance in the Mora opinion", Deutsch v. United States, 2004 WL

633236, *7 (E.D.N.Y. 2004), the Second Circuit has since recognized that the holding in

Alliance Assurance "was explicitly rejected by the Supreme Court in Kosak". Adeleke v. United

States, 355 F.3d 144, 154 (2d Cir. 2004). *See also* Hallock v. United States, 253 F. Supp. 2d 361,

---

[10]    As the United States recognizes, 28 U.S.C. §2680(c) contains an exception for certain claims based on injury or loss of goods while in the possession of CBP, which is inapplicable here. *See* United States' Memorandum of Law [17-1] at 23 n. 6.

368 n. 12 (N.D.N.Y. 2003) ("Mora is not followed to the extent it relies upon its prior decision in Alliance Assurance Co. . . . The Supreme Court [in Kosak] specifically took issue with the statement by the court in Alliance Assurance that the exception does not bar actions based on the negligent destruction of property in the possession or control of customs officers and the Court's holding, on its face, seems very much to usurp, or at the very least contradict, the statement"); Schreiber v. United States, 1997 WL 563338, *4 (S.D.N.Y. 1997) ("[i]t is difficult to make sense of the Mora court's citation of the language in Alliance Assurance that the Supreme Court cast aside in Kosak . . . without any mention of Kosak").

I have doubts that Oehler's claims, which focus on the John Doe CBP Officers' alleged false notification and relate to his post-search arrest and prosecution, arise from the detention of his fuel filter. See Cervantes v. United States, 330 F.3d 1186, 1189 (9th Cir. 2003) ("the exception does not protect the government, whatever it does with a once-detained good, for the rest of that good's existence. The plain text of the statute says the claim must relate to the detention, not to any activity that happened to involve a once-detained item").  However, since these arguments were not raised by Oehler, who bears the burden of demonstrating that his claims fall within the FTCA's limited waiver of sovereign immunity, I conclude that this exception to the United States' waiver of sovereign immunity applies, and recommend that the claim be dismissed.  In any event, even if sovereign immunity did not bar Oehler's claims, I would conclude, for the reasons that follow, that the claims, as pled, fail to state a claim.

### v.     Failure to State a Claim[11]

The United States challenges the facial sufficiency of the Complaint, arguing that Oehler "pleads absolutely no facts whatsoever that even indicate any CBP employees were present for, let alone participated in, [his] arrest or confinement of any kind", or that "any CBP officers initiated, or in any way participated in, [his] state criminal prosecution". United States' Memorandum of Law [17-1] at §V.

Oehler's response focuses on the <u>Franks</u> liability of the John Doe CBP Officers. For instance, he contends that although the "CBP officers were not present for the execution of the search warrant", they may still be "held responsible for their actions leading up to the issuance of the warrant", and that "[w]hen assessing a challenge to a warrant, the conduct of each officer in the chain of information [is] analyzed as a potential source of <u>Franks</u> liability, not just the officer who drafted the warrant application or those who conducted the search." Oehler's Memorandum of Law [24] at 6 (*citing* <u>United States v. Calisto</u>, 838 F.2d 711 (3d Cir. 1988)). However, the Complaint asserts no unreasonable search and seizure claim under the FTCA. *See* Complaint [1], First and Second Claims for Relief.

---

[11]     The United States treats this portion of its motion as being brought pursuant to Rule 12(b)(6). However, "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional . . . . So . . . a plaintiff must plausibly allege all six FTCA elements not only to state a claim upon which relief can be granted but also for a court to have subject-matter jurisdiction over the claim. That means a plaintiff must plausibly allege that the United States, if a private person, would be liable to the claimant under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction." <u>Brownback</u>, 592 U.S. at 217-18. *See also* <u>Salamone v. United States</u>, 618 F. Supp. 3d 146, 151 (S.D.N.Y. 2022) ("if the FTCA claims fail to state a claim upon which relief can be granted under Rule 12(b)(6), the Court lacks subject matter jurisdiction over the claims and will dismiss them pursuant Rule 12(b)(1)").

In any event, even if such claims were asserted against the United States pursuant to the FTCA, lacking are any allegations that the John Doe CBP Officers "had any contact with [Detective Nietzel] the search warrant affidavit affiant" or "even knew a search warrant was being obtained". United States' Reply Brief [27] at 10.  The only FTCA claims asserted here relate to Oehler's subsequent arrest and prosecution, but there are no allegations that the John Doe CBP Officers played any role in Oehler's arrest or prosecution. *See* Jordan v. Pisano, 80 Misc. 3d 1207(A), *6 (N.Y. Sup. Ct. 2023) ("the amended complaint does not plead any facts establishing that Officer Pisano was responsible for the prosecution of plaintiff, in that the amended complaint fails to allege what Officer Pisano did to make him liable for malicious prosecution").

Citing to Kenneson v. Parker, 2022 WL 444887 (D. Conn. 2022), Oehler argues in passing that the initiation element of a malicious prosecution claim can be established "by providing 'false information' in [a] warrant application". Oehler's Memorandum of Law [24] at 6.  However, in Kenneson the defendants allegedly knowingly failed to include exculpatory information in an application for an *arrest* warrant, 2022 WL 4448875, *3-4, whereas here the allegedly false information was used in obtaining a search warrant.

"To initiate a prosecution, a defendant must do more than report the crime or give testimony. He must play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Manganiello v. City of New York, 612 F.3d 149, 163 (2d Cir. 2010).  A law enforcement officer initiates a criminal proceeding for purposes of a malicious prosecution claim by bringing "formal charges and ha[ving] the person arraigned, or fill[ing] out complaining and corroborating affidavits or sw[earing] to and sign[ing] a felony complaint; or "[a]lternatively, an officer initiates a prosecution by creating material,

false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor." Santiago v. City of Yonkers, 2023 WL 2648649, *8 (S.D.N.Y. 2023). *See also* Herrera-Amador v. New York City Police Department, 2021 WL 3012583, *5 (E.D.N.Y. 2021). The Complaint contains no allegations that the John Doe CBP Officers had any involvement in charging Oehler, provided false information to the prosecutor, or otherwise played any role in Oehler's prosecution. Therefore, as pled, I recommend that the FTCA claims based on the conduct of the John Doe CBP Officers be dismissed.

## CONCLUSION

For these reasons, I recommend that:

--    Oehler's motion to strike [20] be granted;

--    the County Defendants' motion to dismiss [4] be granted, except to the extent that it seeks to dismiss the malicious prosecution claim against Detective Nietzel;

--    the Individual Federal Defendants' motion to substitute and dismiss [16] be granted; and

--    the United States' motion to dismiss [17] be granted, except to the extent that it seeks to dismiss the FTCA claims against the United States for malicious prosecution and false arrest/imprisonment premised on the conduct of HSI SAs DellaPenta, Colafranceschi, and Gaczewski.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by August 20, 2024. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . .

waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: August 6, 2024

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge